**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TUNNELL HILL RECLAMATION, LLC,** | : | |
| | : | **Case No. 2:15-CV-2720** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Kemp** |
| **ENDURANCE AMERICAN,** | : | |
| **SPECIALTY INSURANCE CO.,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This insurance coverage dispute is before the Court on Defendant Endurance American Specialty Insurance Company's Motion for Judgment on the Pleadings.  (Doc. 9.)  The Court **DENIES** the Motion.  In addition, the Court **DENIES AS MOOT in part** and **GRANTS in part** the Motion to Bifurcate and Stay Discovery.  (Doc. 27.)

## I.    BACKGROUND

### A.  Factual Background

On January 27, 2012, Defendant Endurance American Specialty Insurance Company ("Endurance"), an insurance carrier incorporated in Delaware with a principal place of business in New York, issued an insurance policy to Plaintiff Tunnell Hill Reclamation, LLC ("Tunnell Hill"), a landfill operator in Perry County, Ohio, for a landfill at 2500 Township Road 205, Route 2, New Lexington, Ohio.  (Compl., Doc. 1 at ¶¶ 2, 9, 11.) The period of coverage for the policy ("policy period") was January 29, 2012 to January 29, 2013.  (*Id.* at ¶ 14.)  The policy consisted of the following coverage sections: occurrence-based Commercial General Liability ("CGL"); claims-based Contractors Pollution Liability ("CPL"); and claims-based Environmental Impairment Liability ("EIL").   (*Id.* at ¶ 10.)

1

The EIL portion of the policy reads as follows:

The *Company* shall pay, up to the Limits of Liability and in excess of the *Self-Insured Retention*, on behalf of the *Insured* all:

- *Cleanup Costs* of the *Insured*
- *Liabilities for Property Damage* to a *Third Party* (including *Cleanup Costs*)
- *Liabilities* for *Bodily Injury* to a *Third Party*; and
- *Defense Expenses*

resulting from *Pollution Conditions* at, upon, within, under or migrating from a *Scheduled Location* which commenced during the *Policy Period* or after the *Retroactive Date*, if any and were *Discovered* and reported to the *Company* during the *Policy Period*, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if any. A *Claim* under this coverage must be reported to the *Company* in accordance with Section VII. Conditions.

(Environmental Impairment Liability Policy, Doc. 1-1 at 4.) The retroactive date for the landfill

in question is January 29, 2000. (Compl., Doc. 1 at ¶ 15.)

The policy further defines the following terms:

- Discovered

  The term *Discovered* means the point in time at which any officer, director, executive or employee responsible for environmental compliance of an *Insured* becomes aware of the existence of a *Pollution Condition*.

- Pollutant(s)

  The term *Pollutant(s)* means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic chemicals, liquids or gases, other irritants or contaminants or any discarded materials of any kind . . . .

- Pollution Conditions(s)

  The term *Pollution Condition(s)* means the gradual or sudden unintended discharge, dispersal, release or escape of *Pollutants* at, upon, within, under or migrating from a *Scheduled Location* which the *Insured* had not *Discovered* at the time of inception of this *Policy*, unless such previously *Discovered Pollution Condition* has been listed by endorsement, is first reported to the *Company* during the *Policy Period*, and commenced during the *Policy Period* or after the *Retroactive Date*, if any.

2

(Environmental Impairment Liability Policy, Doc. 1-1 at 8, 12.)

The policy contains an exclusion provision, which states that the policy "does not cover any *Claims* arising out of, based upon, resulting from or with respect to . . . Known Conditions," which are defined as "[a]ny *Pollution Conditions Discovered* prior to the inception of this Policy. This exclusion does not apply to *Pollution Conditions* disclosed to the *Company* prior to the inception of this *Policy* and specifically listed by endorsement." (*Id.* at 14-15.) The policy does not list any pollution condition by endorsement. (*See* Doc. 1-1.)

Finally, the policy provides that Endurance "has the right and the duty to defend the *Insured* against any *Claim* resulting from a *Pollution Condition*," and that "[t]he *Company's* duty to defend the *Insured* shall terminate when the *Company* establishes (i) the absence of coverage under the terms of conditions of this *Policy*; or (ii) the Limits of Liability have been exhausted." (*Id.* at 22.)

On September 20, 2012, during the policy period, several individuals filed suit against Tunnell Hill and its parent company in the Perry County Court of Common Pleas (the "*Baker* litigation"). (Compl., Doc. 1 at ¶ 16.) The plaintiffs in that case asserted that Tunnell Hill and its parent company failed to control landfill gas emissions from the landfill, creating a nuisance that harmed the plaintiffs. (*Id.*) The *Baker* plaintiffs' amended complaint alleged that on or shortly after July 2011, Tunnell Hill knew about the noxious odor. (*Baker* Am. Compl., Doc. 13-1 at ¶ 17.) Tunnell Hill notified Endurance of the *Baker* litigation on September 25, 2012 and Defendant responded that it would not defend or indemnify Tunnell Hill for the claims in that case. (Compl., Doc. 1 at ¶¶ 19-20.) After the *Baker* plaintiffs voluntarily dismissed some of their claims, the case proceeded to trial on the sole remaining claim for qualified private nuisance, and the jury returned a verdict in the plaintiffs' favor on the question of Tunnell Hill's

3

negligence.  (*Id.* at ¶¶ 21, 24.)  The issue of damages owed to the *Baker* plaintiffs remains pending before the state trial court.  (*Id.* at ¶ 25.)

## B.  Procedural History

Tunnell Hill filed a complaint against Endurance on August 14, 2015, bringing claims for bad faith, breach of contract, and unjust enrichment, as well as a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Endurance has a duty to defend and indemnify Tunnell Hill in the *Baker* litigation.  (Doc. 1 at ¶¶ 27-54.)   On October 12, 2015, Endurance filed an answer as well as a counterclaim for declaratory judgment that it owes no duty to defend or indemnify Tunnell Hill in that litigation.  (Doc. 6.)  Endurance then filed a Motion for Judgment on the Pleadings, which Tunnell Hill opposes.  (Docs. 9, 13.)  Endurance later filed a motion seeking to: (1) stay discovery pending the resolution of the motion for judgment on the pleadings; (2) bifurcate the bad-faith and punitive-damages claims from all other claims; and (3) stay discovery on the bad-faith claim pending the resolution of all other claims.  (Doc. 27.)  Tunnell Hill failed to respond to that motion.

## II.    STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, it is judged under the same legal standard as a Rule 12(b)(6) motion.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision.").  The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th

Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Further, documents that the defendant attaches to its motion "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

### III.    MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant argues that it is entitled to judgment because Plaintiff discovered the pollution condition prior to the inception date of the policy but failed to report it to Endurance before the policy went into effect or to obtain a "known condition" endorsement.  (Doc. 9 at 11.)

### A.  Declaratory Judgment

The interpretation of clear, unambiguous terms in an insurance contract is ordinarily a question of law. *Costanzo v. Nationwide Mut. Ins. Co.*, 832 N.E.2d 71, 77 (Ohio Ct. App. 2005). When the language of a contract is clear and unambiguous, a court may look no further than the terms of the contract to discern the intent of the parties. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d

1256, 1261 (Ohio 2003). When "a contract is ambiguous, a court may consider extrinsic evidence to ascertain parties' intent." *Id.* Ambiguous contract language is construed liberally in favor of the insured and against the insurer. *Faruque v. Provident Life & Acc. Ins. Co.*, 508 N.E.2d 949, 952 (Ohio 1987).

Tunnell Hill seeks a declaratory judgment that Endurance has a duty to defend and indemnify it in the *Baker* litigation, and Endurance, in its counterclaim, requests a declaratory judgment that it has no such duty. An insurer's duty to indemnify arises when liability exists under the policy. *Riverside Ins. Co. v. Wiland*, 474 N.E.2d 371, 375 (Ohio Ct. App. 1984). If the act is indisputably outside the policy's coverage, there is no duty to indemnify. *Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1124 (Ohio 1987). An insurer's duty to defend is a contractual obligation and is distinct from its duty to indemnify. There is no duty to defend if the Court finds that the complaint's "allegations do not fall within the coverage provided." *Zanco v. Mich. Mut. Ins. Co.*, 464 N.E.2d 513, 515 (Ohio 1984) (per curiam).

Endurance contests coverage here, contending that Tunnell Hill has not pleaded facts that it discovered the pollution condition at issue during the policy period. According to Endurance, the trial testimony of Tunnell Hill Chief Executive Officer William Gay and General Manager Rodney Deeds in the *Baker* litigation establishes that Tunnell Hill discovered the hydrogen sulfide odor problem in December 2011, before the policy period commenced, and there is no dispute that it did not report the problem to Endurance before the start of the policy period. (Doc. 20 at 3.) Tunnell Hill does not deny that it discovered an odor problem in December 2011 but argues that this odor emission was a sporadic event, distinct from the later odor problems identified by the *Baker* plaintiffs, and Deeds also characterized the December 2011 odor problem as such during the *Baker* trial. (Doc. 13 at 8.) In support of this position, Tunnell Hill points out

that the landfill was inspected numerous times by the Ohio Environmental Protection Agency

("OEPA") and the Perry County Health Department ("PCHD") and on many occasions received

no notices of violation.  (*Id.* at 7; Ex. E.)  Accordingly, Tunnell Hill suggests that the noxious

odors emitted after the policy period commenced ought to be considered distinct pollution

conditions that are subject to coverage under the EIL policy.[1]  (Doc. 13 at 7.)

---

[1] Tunnell Hill invokes the doctrine of *expressio unius est exclusio alterius*, that is, that "where specific items are listed in a document such as a contract, any item not so listed is typically thought to be excluded."  *Caldwell v. The PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 523 (S.D. Ohio 2011).  Pointing to the CGL section of the policy, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," Tunnell Hill contends that because the EIL coverage section of the policy was drafted not to include "continuous or repeated exposure," the EIL section should be construed as providing coverage for the odor events at issue in the *Baker* litigation, which constituted separate and distinct events discovered during, not before, the policy period.  (Doc. 13 at 10-11.)  Tunnell Hill's reliance on the definition of "occurrence" is somewhat misplaced.  The EIL policy is a claims-based policy while the CGL policy is an occurrence-based policy.  (Insurance Policy, Doc. 1-1 at 1-2.)  These two types of policies are "materially different."  *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 839 N.E.2d 94, 98 (Ohio Ct. Com. Pl. 2005).  "A claims-made policy provides protection when claims are brought against an insured during the life of the policy, while an occurrence-based policy provides coverage when allegedly wrongful acts occur during the policy period without regard to when a claim is presented or a suit is filed."  *Id.* (citing *Mueller v. Taylor Rental Ctr.*, 667 N.E.2d 427, 429 (Ohio Ct. App. 1995)).  In *United States v. A.C. Strip*, the Sixth Circuit, applying Ohio law, held as follows:

> The . . . policy coverage language is written in plain, unambiguous language and clearly states that a claim must be made and reported within the policy period. It is exactly this aspect of a claims made policy that distinguishes it from an occurrence policy. Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time. To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed.

868 F.2d 181, 187 (6th Cir. 1989).  Here, the policy adds a condition to the claims-based EIL coverage that Tunnell Hill must not have discovered the pollution condition before the policy period.  Because this claims-based, or perhaps more accurately, discovery-based coverage is an entirely different kind of coverage than the occurrence-based CGL coverage for which the parties bargained, the Court finds it unconvincing that the language of the CGL policy conclusively establishes the meaning of the disputed terms in the EIL policy.  Because an occurrence-based policy covers any event occurring within the policy period regardless of when the claim is made, it is necessary to clarify that the "accident" covered could include continuous

Defendant points to trial testimony in the *Baker* litigation from Deeds and Gay that they gained knowledge of a hydrogen sulfide odor problem in December 2011.  (Gay Tr., Doc. 9, Ex. C at 17, 21; Deeds Tr., Doc. 9, Ex. B at 69-70.)  Gay also testified that at this same time he became aware that the pollution condition was caused by work on the tie-in project, an operation to expand the facility to begin operating a new discrete waste cell adjacent to the existing waste cells.  (Gay Tr. at 21-22; *see* Deeds Tr. at 74.)  The *Baker* amended complaint alleged that between December 22, 2011 and November 9, 2012 (the date the *Baker* amended complaint was filed), the OEPA had issued no fewer than 14 notices of violation for failure to control odors and between January 12, 2012 and November 9, 2012, the PCHD had issued no fewer than 11 notices of violation for failure to control odors and implement an odor management plan.  (*Baker* Am. Compl., Doc. 13-1 at ¶¶ 30-31.)[2]

Deeds and Gay also testified at trial, however, that the odor events were "sporadic and" and "not continuous."  (Deeds Tr., Doc. 13-6 at 126; Gay Tr., Doc. 13-7 at 35.)  More importantly, OEPA inspector Erika Jackson testified that it was unpredictable when a facility would have hydrogen sulfide odors and that the OEPA had conducted other inspections that had not identified any odors.  (Jackson Tr., Doc. 13-2 at 86, 120.)  And PCHD inspector Cary Bowers testified that he had conducted an unannounced, weekly or twice-weekly visit to the landfill during the time period in question, as well as thorough quarterly inspections, and that most of the inspections yielded no odors. (Bowers Tr., Doc. 13-3 at 162-63, 247-48, 285.)

---

exposure (that is, the precipitating event that caused the continuous exposure might have occurred before the policy period).  Therefore, the Court does not rely on this argument in denying Endurance's motion for judgment on the pleadings.

[2] It is unclear from the face of the complaint or any of the attached documents or other public records submitted by either party how many of these violations occurred before the beginning of the policy period on January 29, 2012.

Inspection records attached to Plaintiff's opposition to Defendant's motion for judgment on the pleadings show that on dozens of occasions between July 11, 2011 and April 2, 2015 the landfill was inspected by OEPA and PCHD and the inspections revealed no violations, including odor problems, at the landfill.  (*See* Doc. 13-5.)   Most notably, there were inspections that yielded no violations on the following dates during the year preceding the inception of the policy and the year of the policy period:  March 29, 2012, July 11, 2012, December 20, 2012, March 26, 2013, April 16, 2013, April 23, 2013, July 11, 2013, August 30, 2013, October 28, 2013, and November 5, 2013.  (Doc. 13-5 at 15, 17, 22, 24-25, 26, 27, 28, 30, 32, 34.)

The parties dispute whether the term "pollution conditions" in the EIL policy was intended to include odor events such as those at issue in the *Baker* litigation, and both have reasonable arguments in light of the language of the contract and the history of inspections regarding odor events at the landfill.  But to the extent that the parties offer "plausible interpretations of the agreement drawn from the contractual language itself[,] [this] demonstrates that the provision is ambiguous" and thus the Court finds that it is not appropriate for resolution on a motion for judgment on the pleadings.  *Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc.*, 876 F.2d 894, 1989 WL 63871, at *6 (6th Cir. 1989) (unpublished).

Nor does the Court find convincing Defendant's assertion in its reply brief that the "known loss," or "loss-in-progress," doctrine requires judgment in its favor because "one cannot buy insurance coverage for a loss already known to be in progress."  (Doc. 20 at 9.)  The known loss doctrine generally stands for "the principle that losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient 'risk' being transferred between the insured and the insurer, are not proper subjects of insurance."  *Burlington Ins. Co. v. PMI Am., Inc.*, 862 F. Supp. 2d 719, 732-3 (S.D. Ohio 2012) (quoting 7 Couch on Insurance §

9

102.8).  But this doctrine has not been adopted by Ohio courts.  *See id.* at 733 (recognizing that no Ohio court has adopted the loss-in-progress doctrine and two Ohio courts have rejected it); *see also Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 513 (6th Cir. 2012) ("Whether Ohio recognizes the known-loss doctrine is unclear."); *Owens-Corning Fiberglas Corp. v. Am. Centennial Ins. Co.*, 660 N.E.2d 770, 777-78 (Ohio Ct. Com. Pl. 1995).  One Ohio trial court, in declining to apply the doctrine, reasoned that "awareness by the [insured] of an act that might someday result in 'damages' is not equivalent to knowledge of damages."  *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 839 N.E.2d 94, 105 (Ohio Ct. Com. Pl. 2005).  It is unclear whether the damages that ultimately resulted from the hydrogen sulfide odor events during the policy period would have been known to Tunnell Hill before the inception of the policy period simply because Tunnell Hill knew that the tie-in project caused the earlier odor events.  This is especially so because, according to Deeds, Tunnell Hill had conducted at least three other tie-in projects that did not result in noxious odors.  (*See* Deeds Tr., Doc. 9, Ex. B. at 71-72.)  The Court, therefore, declines to apply the doctrine here.

Construing the testimony in the *Baker* litigation in the light most favorable to Tunnell Hill as required on a Rule 12(c) motion, Endurance is not "clearly entitled to judgment." *Winget*, 510 F.3d at 581.  The Court **DENIES** Endurance's motion for judgment on the declaratory-judgment claims.

### B.  Breach of Contract and Bad Faith Claims

Endurance argues that it cannot be held liable for breach of contract or bad faith because it owed no duty to defend or indemnify Tunnell Hill for the claims at issue in the Baker litigation and, therefore, these claims must fail as a matter of law.  (Doc. 9 at 19-21.)  Because Endurance makes no other argument that these claims should be dismissed absent the dismissal of Tunnell

Hill's declaratory judgment claims, Endurance's motion for judgment on these claims is **DENIED**.

### C.  Unjust Enrichment

It is well established that Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject.  *See Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989).  Plaintiff acknowledges as much but argues that it is entitled to plead alternative theories of recovery under Federal Rule of Civil Procedure 8(d).  (Doc. 13 at 13.); *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, No. 1:05-cv-702, 2006 WL 2924779, at *3 (S.D. Ohio Oct. 10, 2006) (rejecting defendant's argument that plaintiff's unjust-enrichment claim was preempted even though it was undisputed that the parties had an express contract).  *See also United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 112-13 (S.D. Ohio 1998); *Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*, No. 3:07-cv-156, 2008 WL 4372697, at *15 n.20 (S.D. Ohio Sept. 23, 2008).  The Court agrees that under Rule 8(d) a plaintiff may plead both breach of contract and unjust enrichment even though it may not ultimately recover for both.  Defendant's motion for judgment on the unjust-enrichment claim is **DENIED**.

### IV.     MOTION TO BIFURCATE AND STAY DISCOVERY

On May 31, 2016, Defendant filed a motion seeking to: (1) stay discovery pending the resolution of the motion for judgment on the pleadings; (2) bifurcate the bad-faith claim from the other claims in this suit; and (3) stay discovery on the bad faith claim pending resolution of the other claims in the suit.  (Doc. 27 at 1.)  Plaintiff did not respond to the motion.

Because the Court has now ruled on the motion for judgment on the pleadings, the motion to stay discovery pending resolution of that motion is **DENIED AS MOOT**.

As to the request to bifurcate the bad-faith claim from the other claims and stay discovery on that claim, Endurance argues that such a ruling is necessary because it would prevent prejudice to Endurance that "would undoubtedly result from the disclosure of attorney-client communications and work product materials that would flow from Tunnell Hill's entitlement to discovery in connection with its cause of action for bad faith." (Doc. 27 at 9.) Endurance also asserts that bifurcation and a stay would serve the interests of judicial economy and avoid juror confusion because resolution of the coverage issue in its favor would potentially moot the bad-faith claim and dispose of the litigation entirely. (*Id.*) Finally, Endurance contends that bifurcation is mandatory here because Tunnell Hill seeks punitive damages for its bad faith claim, and Ohio Revised Code § 2315.21(B) mandates that a court bifurcate the compensatory and punitive damages phases of a tort action. (*Id.* at 11.)

The decision whether to bifurcate discovery lies within the sound discretion of the trial court. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). Plaintiff has failed to respond to Defendant's motion, and the Court generally finds Defendant's arguments, at least as to the mandatory nature of bifurcation of the bad faith claim from the other claims *at trial*, well taken. *See Maxey v. State Farm Fire & Cas. Co.*, 569 F. Supp. 2d 720, 724 (S.D. Ohio 2008) ("Plaintiff's claims for bad faith are torts, and therefore subject to [Ohio Rev. Code] § 2315.21(B)(1)."); *Stewart v. Siciliano*, 985 N.E.2d 226, 233 (Ohio Ct. App. 2012) ("Although [§ 2315.21(B)(1)] does not require bifurcation of the breach of contract claim and the bad faith claim, it does require the bifurcation of the presentation of evidence of compensatory damages and that of punitive damages regarding the bad faith tort claim.").

Although Ohio law does not require a stay of discovery on the bad-faith claim even when the presentation of evidence at trial must be bifurcated, *see Boone v. Vanliner Ins. Co.*, 744

N.E.2d 154, 158 (Ohio 2001) (holding that a stay of discovery is within the discretion of the district court), the Court finds that a stay is appropriate here.  Because the merits of the bad-faith claim depend on the outcome of the coverage issue, it is reasonable to stay discovery of the bad-faith claim until the resolution of the coverage-related claims.  *Smith*, 403 F.3d at 407.  Such a course of action is likely to streamline and expedite final adjudication of this action.  Defendant's motion to bifurcate the bad-faith and punitive-damages claims from the other claims in this suit and to stay discovery of the bad-faith and punitive-damages claims pending resolution of the other claims is **GRANTED**.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED**.  (Doc. 9.)  Defendant's Motion to Bifurcate and Stay Discovery is **DENIED AS MOOT in part** and **GRANTED in part**.  (Doc. 27.)  Specifically, the motion to stay discovery pending resolution of the motion for judgment on the pleadings is **DENIED AS MOOT**.  The motion to bifurcate the bad-faith claim and stay discovery on that claim is **GRANTED**.

**IT IS SO ORDERED.**

___s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  July 12, 2016**

13